IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES EARL THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) CV 97-N-1814-S |
| JESSICA McLOMORE EATMAN; WINFIELD J. SINCLAIR; T. MICHAEL PUTNAM; ROY L. WILSON; GENE HODGES, Jr.; MARTHA HUGHES; and JOHN DOE #1, 2, 3, 4, 5, & 6, | ) |
| Defendants. | ) |

**ENTERED**
SEP 2 1 2000

## MEMORANDUM OF OPINION

James Earl Thomas, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. §§ 1985(3) and 1986, alleging a "conspiracy for the purpose of depriving him of the equal protection of the laws." Plaintiff names as defendants Jessica McLomore Eatman, Assistant United States Attorney Winfield J. Sinclair, United States Magistrate Judge T. Michael Putnam, United States Secret Service Agent Roy L. Wilson, United States Postal Inspectors Gene Hodges, Jr., and Martha Hughes; and federal agents "John Doe # 1, 2, 3, 4, 5, & 6." As relief for the alleged constitutional violations, plaintiff seeks declaratory and injunctive relief, as well as money damages.

Under the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, this court is required to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint



that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. While the former 28 U.S.C. § 1915(d) permitted the court to dismiss claims *sua sponte* only if the court found them frivolous or malicious, the new Section 1915A directs the court, in effect, to make and rule on its own motion to dismiss the complaint prior to service. In order to protect a *pro se* prisoner's right of access to the courts, however, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

In his complaint, plaintiff states that he was released on parole in 1988. He thereafter opened a business in Birmingham, Alabama, "sell[ing] identification cards." Complaint (Document #1) at 6. According to plaintiff, anyone who wanted to purchase a card "would write his/her name, address, weight, height, date of birth, color of eyes and hair and social security number on paper." *Id.* Plaintiff or his employee would then type that information "on a pre-printed I.D. card," take a picture of the person, attach the picture to the pre-printed card and laminate the card. *Id.* Plaintiff charged $15.00 for these identification cards. *Id.*

On April 3, 1995, and June 19, 1995, Postal Inspector Eddie Cox (who is not named as a defendant in this action) purchased an identification card from plaintiff's business. Thereafter, Postal Inspector Gene Hodges and "his boss" approached plaintiff and requested that he "work with [them]" by providing them with pictures of the people who purchased identification cards from him. *Id.* Plaintiff refused this request, but did provide the inspectors with a blank copy of the identification card. *Id.* at 7.

On August 9, 1995, after selling an identification card to Jessica Eatman, plaintiff and his employee were then arrested by officers he identifies only as John Does. *Id.* at 8. Plaintiff states that Agent Wilson then "filed a false charge against him so that his parole would be revoked." *Id* at 9. Plaintiff appeared before United States Magistrate Judge T. Michael Putnam on August 10, 1995. The federal charge remained pending against plaintiff until his state parole had been revoked. Assistant United States Attorney Sinclair then dismissed the charges. *Id.*

According to plaintiff, defendants Sinclair, Putnam, Wilson, Hodges, Hughes, and John Does # 1, 2, 3, 4, 5, and 6 "willfully and maliciously conspired, planned, and agreed to unlawfully use their positions, influences, knowledge, and authority to entrap plaintiff into committing or talking about committing, or assisting defendant Eatman into committing a crime for the purpose of getting his parole revoked and that he be sent back to the State Penitentiary." *Id.* at 7.

## FICTITIOUS PARTIES

Plaintiff names as defendants "John Doe # 1, 2, 3, 4, 5, and 6." "Fictitious party practice is not authorized by the Federal Rules of Civil Procedure or any other federal statute." *Weeks v. Benton*, 649 F. Supp. 1297, 1298 (S.D. Ala. 1986). The John Doe defendants are therefore due to be stricken from this action.

## CLAIMS UNDER § 1985(3) and § 1986

As noted above, plaintiff brings this action pursuant to 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) prohibits two or more persons from conspiring to deprive any person or class of persons of the equal protection of the law. "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). In order to establish a conspiracy under § 1985(3), "a plaintiff must demonstrate that the conspirators ha[d] an agreement to inflict injury or harm upon him" and that they "act[ed] with a single plan, the general nature and scope of which [wa]s known to each would-be conspirator." *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999). Conclusory assertions such as the "defendants agreed to violate plaintiff's rights and took 'concerted action' to do so" are not sufficient to establish the fact of a conspiracy. *Aniniba v. City of Aurora*, 994 F.Supp. 1293, 1298 (D. Colo. 1998). Section 1986 "applies when a person, including a federal officer acting under color of federal law, has knowledge that an act mentioned in § 1985 is about to be done, has the power to prevent the same, and fails to act. It can only be pleaded once a Plaintiff has sufficiently alleged a § 1985(3) violation." *Bergman v. United States*, 551 F. Supp. 407, 415 (W.D. Mich. 1982).

Plaintiff repeatedly asserts that the defendants conspired to falsely charge him with a criminal offense in order to revoke his parole, but he has failed to set forth specific facts clearly demonstrating that an agreement for this purpose actually existed between any of the named defendants. "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). Accordingly, plaintiff's claims of conspiracy are due to be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Because plaintiff has failed to sufficiently allege the elements of a § 1985(3) violation, he cannot maintain a claim under § 1986.

### PROSECUTORIAL and JUDICIAL IMMUNITY

The claims for monetary damages against Assistant United States Attorney Winfield Sinclair and United States Magistrate Judge T. Michael Putnam are also due to be dismissed on the basis of absolute immunity. In *Imbler*, the United States Supreme Court held that state prosecutors have absolute immunity for their prosecutorial actions in cases seeking money damages. The rationale of *Imbler* is equally applicable to federal prosecutors. *Brawer v. Horowitz*, 535 F.2d 830, 834 ( 3rd Cir. 1976). Although subsequent cases have held that such absolute immunity may not extend to those aspects of a prosecutor's responsibility that cast him in the role of an administrator or investigative officer, it is still clear that a prosecutor is immune from a civil suit for damages when he is performing the normal range of prosecutorial actions in connection with a criminal case. This immunity is applicable even where the prosecutor acts "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986); *accord, Prince v. Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978). Prosecutorial immunity also extends to claims brought pursuant to § 1985. *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir.1992), *cert. denied*, 506 U.S. 1053 (1993). In this case, plaintiff has failed to set forth any facts that would demonstrate that defendant Sinclair has acted in any manner other than as a prosecutor. Defendant Sinclair is therefore entitled to prosecutorial immunity and all of the claims for monetary damages against him are due to be dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

As for Magistrate Judge Putnam, it is well settled that judges are entitled to the defense of absolute judicial immunity and are not subject to liability for damages for actions committed within their jurisdiction. This immunity extends to actions under § 1985. *See Scott v. Hayes*, 719 F.2d 1562 (11th Cir. 1983). Moreover, this immunity applies even when the judicial acts are done maliciously or corruptly. *Stump*, 386 U.S. at 356; *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986); *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1985). All of the claims for monetary damages against Magistrate Judge Putnam are therefore due to be dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

DATED this 21st day of September, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE